## 21942. CANDLER *v.* YAARAB TEMPLE BUILDING COMPANY.

DECIDED APRIL 29, 1932.

*Tye, Thomson & Tye, Edwin L. Sterne,* for plaintiff in error.

*Colquitt, Parker, Troutman & Arkwright, Branch & Howard, Bond Almand,* contra.

LUKE, J. In an action in the city court of Decatur by Yaarab Temple Building Company against Asa G. Candler Jr., to recover a sum subscribed toward the building fund, exceptions were taken by defendant to the rulings of the trial judge in allowing an amendment to plaintiff's declaration over defendant's objection, and (a verdict and judgment having been rendered in favor of the plaintiff) in denying defendant's motion for a new trial. However, the exceptions to the allowance of the amendment to the declaration are not argued or insisted upon in the brief of counsel for the plaintiff in error, and, therefore, are treated as abandoned.

The facts disclosed upon the trial were substantially as follows: The plaintiff, Yaarab Temple Building Company, is a quasi-charitable corporation, organized under the auspices of Yaarab Temple A. A. O. N. M. S., an unincorporated association and without authorized capital stock, and subject to the control and direction of the unincorporated association. The defendant was, at the time of the execution agreement, and ever since that time has continued to be, a member of the unincorporated association. Sometime prior to the year 1925 the unincorporated association had acquired title to property at the corner of Peachtree and Kimball streets, comprising 53,165 square feet, and had paid for the property in full. In the year 1925, Yaarab Temple organized and conducted a subscription campaign among its members with the object of raising one million dollars to be expended in the erection of an auditorium and temple upon the land then owned by the association. The form of the subscription agreements obtained, among which was the subscription agreement of the defendant for ten thousand dollars, was as follows:

"In consideration of benefits to be received under beneficial loan certificate hereinafter referred to and of the subscriptions made by others for the same purpose the undersigned hereby subscribes

to Yaarab Temple A. A. O. N. M. S., of the City of Atlanta, Ga., upon the conditions set forth on the reverse side of this card, the sum of ten thousand and no dollars, to be paid in the following installments, to wit: one fifth on or before January 1, 1926, one fifth on or before July 1, 1926, one fifth on or before January 1, 1927, one fifth on or before July 1, 1927, and the remaining one fifth on or before January 1, 1928.

[Reverse side] "The within subscription is subject to the following conditions: (1) That the money paid hereunder shall be used in the erection and construction of an auditorium and temple and incidental expenses connected therewith, on the land now owned by Yaarab Temple in the City of Atlanta, Ga. (2) That when the full amount subscribed has been paid there shall be issued to the subscriber the beneficial loan certificate of Yaarab Temple providing for the payment of the sum hereby subscribed as follows: (a) Upon the death of the subscriber the amount subscribed, without interest, shall be paid to Scottish Rite Hospital, Atlanta, Ga., or to such other person or persons as subscriber may hereafter designate by written notice to the Recorder of Yaarab Temple A. A. O. N. M. S., Atlanta, Georgia. (b) Yaarab Temple shall have the right and power to redeem the certificate issued upon the payment of his subscription, at any time at its face value, without interest. (c) In event of death of the subscriber prior to the payment in full of said subscription, it is expressly understood and agreed that Yaarab Temple shall not be required to pay more than a sum equal to the amount paid on the said subscription without interest."

After obtaining something in excess of one million dollars of such pledges, the unincorporated association caused a charter to be obtained for "Yaarab Temple Building Company," and conveyed to that corporation the real estate hereinbefore mentioned, and at the same time executed and delivered to the corporation an assignment of all such subscriptions or pledges, which assignment is in the following form: "Know all men by these presents: that pursuant to a resolution passed at a special meeting of the members of Yaarab Temple A. A. O. N. M. S. of the city of Atlanta, held on August 2, 1926, at its headquarters at Atlanta, Ga., the undersigned does hereby set over and assign unto Yaarab Temple Building Company, a corporation, its successors and assigns, all sums of money and all right and power to collect said sums of money which are

due and/or payable, or may be due and/or payable, under any and all subscriptions [amounting to approximately 3,570 in number] made by various persons to said Yaarab Temple A. A. O. N. M. S. of the City of Atlanta, for its building fund for the erection of a Temple or Mosque on its property at the corner of Kimball and Peachtree streets, in the City of Atlanta, Georgia. Said Yaarab Building Company having been created as a corporation for the purpose of holding the title to said property, collecting the moneys necessary to build the Temple or Mosque thereon, and financing the construction thereof by and with the consent of said Yaarab Temple A. A. O. N. M. S. Said Yaarab Temple does not hereby intend to transfer or assign to said Yaarab Temple Building Company the entire contracts evidenced by said subscriptions, or to relieve itself of the obligations contained thereon to issue to the subscriber the Beneficial Loan Certificate providing for the repayment of the sum subscribed. The obligation to issue said loan certificate and to repay the sum paid by the subscriber shall not be affected by this assignment. In witness whereof said Yaarab Temple A. A. O. N. M. S. of the City of Atlanta has hereunto set its hand by its Illustrious Potentate and Recorder, this the 24th day of February, 1930. Yaarab Temple A. A. O. N. M. S. of the City of Atlanta, By William A. Fuller, Potentate, Geo. E. Argard, Recorder."

Thereupon the Building Company acquired by purchase an area of 15,962 square feet of additional land adjacent to and in the rear of the property theretofore conveyed to it, and proceeded with the erection, not only of the proposed temple or mosque, but certain buildings designed for commercial purposes, at an expense of about $3,000,000, upon the combined properties so acquired. Some of the subscribers to the building fund having defaulted in the payment of their pledges, the Building Company instituted legal proceedings looking to their collection, and among these the instant action against Asa G. Candler Jr.

The defendant admitted the execution of the subscription agreement, but denied any liability thereon, on the ground that, as averred in his answer, "At the time said subscription was made in 1925, it was one of the express conditions thereof that the money was to be used only for the erection of an auditorium and temple, and the expense incident thereto, and said auditorium and temple were to be erected on land then owned by Yaarab Temple, in the City of

Atlanta, Georgia; . . that after this subscription had been made by defendant, and before the payments thereunder matured, that the building committee of Yaarab Temple, who had obtained said subscription upon conditions above set forth, decided, over the protest of this defendant, to change its entire building program, and instead of erecting a temple and auditorium on the property then owned, to acquire such additional property and to erect thereon and on the property already owned in connection with the temple and auditorium, extensive commercial buildings or stores, and that the changes were of a very material nature and added many thousands of dollars to the cost of the enterprise." He also avers that "this defendant notified the building committee before it purchased said additional property or began work on said building that if such changes in the plans were made, it would be a violation of the terms upon which the subscription had been obtained, and that he would not pay the subscription." He further avers that the building committee persisted in this change of plans; incurred a large indebtedness which would not have been incurred had the original plans been adhered to, and thereby depreciated the value of the beneficial loan certificates proposed to be issued to subscribers; that the conditions upon which his subscription was made were not complied with; and that, therefore, he is relieved and discharged from all obligation upon his subscription.

We have presented before us in the foregoing recitals the not unusual case of a commendable project, conceived only in general outline, with its development depending upon circumstances arising from day to day, launched, doubtless, in a wave of enthusiasm by the members of a great fraternal association, who, as they proceeded from one stage of operations to another, were faced with difficulties that were not, perhaps, reasonably to have been anticipated, and by the force of circumstances were from time to time compelled to effect important readjustments in their scheme. It was evidently under just such conditions that the subscription involved in this controversy was voluntarily made. The defendant was, during the period of these operations, a member of the association conducting them. He was one of those chosen by the organization to solicit subscriptions. His testimony upon the witness stand indicates that he was reasonably familiar with the details of the operation. He testified that he was a member of the building committee, hav-

ing all the functions that its name implies. He testified that he gave notice at one of the meetings of that committee that if the change of plans involving the purchase of additional land and the erection of commercial buildings in connection with the temple and auditorium were persisted in, he would not pay his subscription. He further testified that he did not recall the name of any member of that committee present at the meeting to which he referred, excepting one member by the name of Bowen, who was since deceased; and that he made no such protest at any meeting of the association, and no other protest at any time. He regularly received notices of meetings at which resolutions concerning the plan of building were to be proposed, but attended none of them. Apparently the association, though extended minutes of proceedings and discussions were preserved, had no record of any such protest emanating from the defendant or in his behalf. It is conceivable that, in such circumstances, the jury thought the protest was not sufficiently vocal to have required any sort of recognition by the association.

It seems appropriate at this juncture to examine, in some measure, the nature of the corporation to which the subscription pledged by the defendant, with the right and power to collect that subscription, was assigned by the association. Its charter states its objects and purposes are social and charitable; it has no capital stock; it has the right to build and maintain the temple or mosque at the corner of Peachtree and Kimball streets, in Atlanta; it is to be supported by contributions from members of the association and from non-members in sympathy with its objects and purposes, and by income from its building; its board of trustees are to be members of the unincorporated association, to be chosen from time to time for specified terms; and the members of the unincorporated association have the right to increase or reduce to not less than five members the board of trustees of the corporation. Concededly this corporation was organized for the purpose of creating a legal entity in which the title to the real estate of the unincorporated association might be vested by proper conveyances, and through which the subscriptions to the building fund might be collected by legal proceedings if necessary, and the financial arrangements in connection with the erection of the buildings contemplated could legally be effected. As we view the matter, the corporation was designed, in the particulars set out in its charter, to take over and to

execute certain rights, powers and privileges that otherwise would be necessarily exercised by the trustees of the association. It was, so to speak, a creature of convenience.

The arguments in the briefs of counsel are largely devoted to somewhat technical and difficult questions of law. Was the subscription agreement in the nature of an entire contract, and not divisible, and, for that reason, the purported transfer and assignment of the money due or to become due thereon an invalid assignment? Was not the purported transfer and assignment, if effective in law, a mere power of attorney to collect the sum pledged in the name of the association? If the assignment of the subscription agreement, to the extent that it was assigned, is valid in equity, was not the association a necessary party to any proceedings looking to the collection of the subscription, in which the rights of all three parties could be adjudicated, and, therefore, not an action at law, but a suit in equity would be the proper proceeding? Was the question whether or not the modifications and changes in the plans of the association were so material as to effect a release of the defendant's subscription a question of law to be decided by the judge, or one of fact to be determined by the jury?

We are of the opinion that the transfer and assignment of the defendant's subscription, from the unincorporated association to the corporation, was intended to and did vest in the corporation the legal interest of the association in that subscription. If that view is correct, then of course the corporation alone was authorized to maintain an action to enforce its payment. We can not think of any rights or interests of the association that were subject to adjudication, or that were actually adjudicated in the pending action, or that could be affected thereby, and, therefore, we see no merit in the argument on behalf of the defendant that the remedy of the plaintiff is in equity and that the association was a necessary party to the proceeding.

So far as the modifications in the plans for the improvement of the property are concerned (if, indeed, it can accurately be said that there were modifications in plans that were only vaguely conceived and depended for their development upon a variety of contingencies arising from time to time), we are not so sure but that the defendant was estopped by his conduct to deny his liability, because of his membership in the association, because of his actual knowledge of

the facts attending such modifications, because of his failure to take more definite measures to register his opposition than the somewhat indefinite protest that he claims to have made to a member of the building committee, and because he thus stood by while the corporation proceeded with the construction of the temple and auditorium, together with the commercial buildings of which he complains, and in good faith, for all that appears, incurred a large indebtedness in the expectation that all such subscriptions, including defendant's, would be paid as promised. In any event, we are of the opinion that the question whether or not such modifications of plans were material to the extent of operating as a discharge and release of defendant from his liability was a question of fact, or at least a mixed question of fact and law, which was properly submitted to the jury for determination with appropriate instructions from the court. Our view is that the question was fairly and impartially submitted, without any intimation of opinion as claimed, and we see no reason to disturb the verdict and judgment for any reason assigned.

In our final analysis of the facts, we fail to see wherein the defendant has suffered or will likely suffer any injustice or financial loss by reason of any of the matters set out in the answer by way of defense, or any reason why the beneficial loan certificates provided for in the subscription contract should be less valuable or less likely to be redeemed as stipulated, as a result of any of the things of which the defendant complains. On the contrary, it would seem that these very transactions are rather calculated to improve than to impair the prospect that the certificates will eventually be redeemed as originally contemplated.

The motion for a new trial was properly overruled.

*Judgment affirmed. Broyles, C. J., concurs. Bloodworth, J., absent on account of illness.*